LAW OFFICES OF
GINA MENDOLA LONGARZO, LLC

400 MAIN STREET
CHATHAM NEW JERSEY 07928
973.635.2901

Attorneys for Plaintiff
AMANDA HOLLEY
Our File No. 30.04.478
GML-1172

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMANDA HOLLEY,<br><br>        Plaintiff,<br><br>vs.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE DEPARTMENT, SUPERINTENDENT MICHAEL A. FEDORKO, CHIEF MICHAEL BROWN, SERGEANT ERICK TORRES, and JOHN and JANE DOES 1-10, (fictitious names),<br><br>        Defendants. | CIVIL ACTION NO.<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Amanda Holley, residing in the Township of Jackson, County of Ocean, in the State of New Jersey, by way of Complaint against the Defendants, the Port Authority of New York and New Jersey, the Port Authority of New York and New Jersey Police Department, Superintendent Michael A. Fedorko, Sergeant Erick Torres, and John and Jane Does, 1-10 (fictitious names), says:

**JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331 and 1343 and the pendent jurisdiction of this Court over state claims. Venue is proper within this District because the unlawful practices complained of herein all occurred within the District of New Jersey.

2. The causes of actions alleged seek to protect the right to be free from unlawful employment practices and to redress the deprivation of civil rights under the color of state law and of rights secured by the United States Constitution, and the statutory and common laws of the State of New Jersey, and to recover damages, costs, and attorneys fees under 42 U.S.C. §1983, §1985, §1986 and §1988.

3. The actions (and inactions) and conspiracies alleged herein were engaged in and carried out by all Defendants as officials, agents, employees, and co-conspirators of the Port Authority of New York and New Jersey Police Department acting by and through their employees, agents, officials and co-conspirators pursuant to governmental policy, practice, and custom and under color of law.

## THE PARTIES

4. Plaintiff is a Caucasian female.

5. Defendant, Port Authority of New York and New Jersey [hereinafter, the "Port Authority"] is a public entity doing business in the District of New Jersey. Plaintiff was a Port Authority of New York and New Jersey Police Academy [hereinafter, the "Academy"] recruit at the Port Authority of New York and New Jersey Police Department in Jersey City, New Jersey.

6. Defendant, Port Authority of New York and New Jersey Police Department [hereinafter, the "PAPD"] is a public entity in doing business in the District of New Jersey. Plaintiff was an Academy recruit at the PAPD.

7. At all relevant times, Superintendent Michael A. Fedorko was an employee of the PAPD serving as the superintendent of Police/Director of Public Safety of the PAPD.

2

Mr. Fedorko is being sued in an individual capacity and in his capacity as an employee and/or agent of the PAPD. Mr. Fedorko was a supervisor of Plaintiff and is a male.

8.  At all relevant times, Chief Michael Brown was an employee of the PAPD serving as the commanding officer of the PAPD. Chief Brown is being sued in an individual capacity and in his capacity as an employee and/or agent of the PAPD. Chief Brown was a supervisor of Plaintiff and is a male.

9.  At all relevant times, Sergeant Erick Torres was an employee of the PAPD serving as Plaintiff's direct training supervisor. Sgt. Torres is being sued in an individual capacity and in his capacity as an employee and/or agent of the PAPD.

10. At all relevant times, Plaintiff and the individual Defendants were parties to a collectively negotiated labor agreement, [hereinafter "the agreement"] which contained provisions regarding the procedure for resolving disputes between the parties. The agreement addresses the proper procedure for the filing and handling of grievances and also addresses the procedure and rights of employees and recruits facing discipline, removal and/or termination.

11. All of the individual Defendants engaged in a conspiracy and in wrongful acts which denied Plaintiff of her state and federal constitutional rights to fair employment, equal protection, and to the protection and exercise of all her civil rights. The Defendant employers also deprived Plaintiff of constitutional rights through the exercise of its improper and wrongful policies and deprived Plaintiff of the rights guaranteed to her pursuant to the agreement between the parties on contractual employment rights and remedies.

3

12. All the Defendants collectively and separately engaged in activity which violates state and federal law, common law, and statutory law. All the Defendants engaged in intentional, fraudulent, criminal, and quasi-criminal activities which resulted in a blatant disregard of administrative procedures and anti-bias legislation. The Defendants also violated Plaintiff's rights, liberties, and protections guaranteed by the constitution of the United States and created an intolerable, abusive, and hostile work environment.

13. The misconduct of all of the Defendants has resulted in the injuring of Plaintiff.

14. All of the individual Defendants have been listed herein based upon their specific, individual acts of civil rights violations and discrimination directed toward Plaintiff and/or their failure to prevent co-workers, superiors and subordinates of Plaintiff from engaging in conduct that was obviously discriminatory harassing, and retaliatory in nature toward Plaintiff. The Defendants are also listed herein based upon their direct acts and the failure to act when action was required which created an intolerable, abusive, and sexually hostile work environment and caused harm to Plaintiff.

## STATEMENT OF FACTS

15. Plaintiff, Amanda Holley, was an Academy recruit at the PAPD.

16. Plaintiff entered the Academy located in Jersey City in August 2013. Plaintiff was officially hired on August 16, 2013, and received a salary and benefits. Plaintiff started training at the Academy on August 19, 2013, and was scheduled to graduate on January 10, 2014.

4

17. Since the inception of her training at the Academy, Plaintiff's instructors harassed and discriminated against her for being a young woman. Plaintiff's instructors made many explicit and sexually harassing comments about her and taunted her repeatedly by singling her out and targeting her constantly while yelling at her during physical training claiming she was too feminine for physical exertion.

18. PAPD instructors would publically make discriminatory comments to Plaintiff like telling her that perpetrators were not going to take her seriously and would disparage her because of the way she looked and referred to her as a "Barbie Doll".

19. The harassment grew so extreme and severe that other PAPD recruits would contact Plaintiff and tell her that they noticed she was being harassed and ridiculed and felt badly for her.

20. Sgt. Erick Torres was often on patrol for Plaintiff's platoon, Squad Bravo 3 [the "Squad"] during most of Plaintiff's time at the Academy. Sgt. Torres harassed Plaintiff more than any other instructor. Indeed, the harassment was so severe that, on one occasion, Officer Elliot Kilnbovsky asked Plaintiff, "What goes through your head when Sgt. Torres harasses you?"

21. On numerous occasions during her time at the Academy, Sgt. Torres would call Plaintiff an "American Girl Barbie Doll" whenever he saw her. Sgt. Torres also said in front of the Squad, "Holley. You are like an American Girl Doll." Sgt. Torres would often sing, "She is an American Girl Doll." One time, Sgt. Torres told Plaintiff that he took his two daughters to the American Girl Doll store and swore that he saw Plaintiff there.

5

22. Sgt. Torres would often make Plaintiff do squat thrusts in front of the entire platoon and perform for him and others.  During a physical training session, Sgt. Torres said, "Holley, what the fuck are you doing? Holley, get on the stage and show the platoon how you do squat thrusts."  Sgt. Torres also told Plaintiff that he would harass her until she gets her gun and acknowledged that she might want to shoot him because of all the harassment.

23. During Plaintiff's training at the Academy, in an effort to embarrass Plaintiff, Sgt. Torres would ask what she did before coming to the Academy.  Plaintiff told Sgt. Torres that she was a social worker for the New Jersey Department of Corrections.  On one particular occasion, Sgt. Torres made Plaintiff announce to the entire class what she did for a living. Plaintiff told her squad that she has a Masters Degree in social work and worked as a social worker in a prison system.  Plaintiff further explained that she rehabilitated inmates.  Sgt. Torres made it appear that Plaintiff did not have the gumption to do law enforcement work and should have stuck with social work solely because she was a young female.

24. Plaintiff's other instructors harassed Plaintiff as well. On three separate occasions, three different instructors, Officer John Orlando, Officer Javier Cerna and Officer Vincent Disimone, went up to Plaintiff and asked her if she was married or had children and were hinting that she belonged at home with a family instead of being in the Academy.

25. During Plaintiff's first physical fitness evaluation on August 21, 2013, Officer Kruzey purposely did not put enough weight on Plaintiff's bench press.  As a result, Plaintiff

6

did not lift the appropriate percentage according to her body weight and, therefore, failed the physical fitness evaluation.   However, after Plaintiff was done lifting, Officer Kruzey informed Plaintiff that she passed the evaluation and said, "Good Job!" He thus led Plaintiff to believe she had passed instead of properly advising her and allowing her to rectify the situation.  Plaintiff's second physical fitness evaluation took place on October 15, 2013.  After both the first and second physical fitness assessment for Plaintiff's squad, Officer Orlando and Sgt. Torres asked Plaintiff how many push-ups she could do in front of the entire platoon.

26. On October 4, 2013, the day when Plaintiff's squad would receive OC training, Officer Josh Oliveri said to the entire Bravo Platoon, "Everyone will live except Holley; Holley may die."  While Plaintiff was waiting in line for the OC spray test by the squads, Sgt. Torres made Plaintiff move from her position, fourth in line, to the next person in line.  Plaintiff was sprayed by over four officers, including Sgt. Torres who is not certified as an OC instructor.  No one else in Plaintiff's squad was sprayed as much or by as many officers.[1]

27. At the conclusion of the spraying, as Chief Michael Brown approached, Sgt. Torres told the platoon that he was not OC certified and stated, "You didn't see me spray. Roger that."  The platoon responded, "Roger that."

28. Plaintiff was in pain from the sprays for six hours and could not open her eyes and ran and hid under a fire truck to keep the wind out of her burning face and eyes.  A few hours later, after everyone was sprayed, Sgt. Torres made Plaintiff stand up in front of

---

[1] A fellow recruit told Plaintiff afterward that it looked as if she was being spray-painted with graffiti.

the entire platoon so that they could see her face.  He paraded her in front of the platoon and asked her if she got "Botox" because her face and lips were swollen from the OC spray. Sgt. Torres then called Plaintiff "Angelina Jolie."  Sgt Torres proceeded to interrogate Plaintiff and belittle her in front of the whole platoon. He asked Plaintiff when she arrived at John F. Kennedy Airport for OC spray training, if she had time to leave and come back from a quick "Botox" injection.

29. During the week of October 7, 2013, in the midst of Plaintiff's midterm evaluation with Sgt. Torres and Lt. Adorno, Lt. Adorno told Plaintiff to have a seat.  Lt. Adorno then told Plaintiff to take her cover, an eight point police hat, off and put it on the table in front of her.  After Plaintiff followed Lt. Adorno's orders, Sgt. Torres threw it at Plaintiff.  Plaintiff sat through the meeting with her cover on her lap.  Sgt. Kenyetta Pichardo did Plaintiff's evaluation and gave her a satisfactory rating on everything. Afterward, Sgt. Torres told Plaintiff that she was lucky that he did not do her evaluation because he would have not given her a good rating.

30. During the week of Defense Tactics training [hereinafter "DT training"], November 11 through November 15, 2013, Sgt. Torres said to Plaintiff in front of the Squad, "Holley when you are killed in the line of duty, I'll make sure you look pretty for your family.  I do a lot of funerals for fallen cops and I normally never look at their face, but for you I'll make sure you look pretty for your family." Sgt. Torres then said in front of the Squad, "Holley, I am going to make you hate me up until you get your gun, and then I'll leave you alone because I don't wear my vest as often as I should."

31. On one particular occasion during DT training, the PAPD instructors were discussing pressure points and massage points. Officer Diaz said to Plaintiff, "Not that kind of massage" and then said, "Happy Ending." Officer Diaz then said to Plaintiff, "Look that up Holley." Officer Triantafillos Lekkas also commented, "Yeah, look that up Holley."

32. The firearms range training began on November 4, 2013. Instead of providing the required training as instructors, the firearms instructors instead video-taped Plaintiff and other female recruits from behind while they were shooting. One time, Plaintiff saw Officer Kraft taking a video of a female recruit who was shooting next to Plaintiff. Essentially, the instructors neglected to properly train the recruits and do the mandatory drill in violation of the Division of Criminal Justice Police Training Commission Fire Arms Manual, but instead made fun of the female recruits and took photographs of their buttocks during the entire time while they were shooting. Thus, Plaintiff then began to go to the range on her own with four other instructors from three different police training academies, including two from the Union County Police Academy, one from the New Jersey Dept of Corrections and a retired PAPD firearms instructor, to receive proper instruction.

33. Additionally, it was a common practice at the Academy for targets to be signed before they were shot at with a firearm. The target would then be graded in private and later evaluated with the recruit. However, Plaintiff never saw any of her graded targets after the qualifications course was complete. The instructors also never evaluated Plaintiff's targets with her and never instructed her about how to correct any issues.

To date, Plaintiff is still unaware as to what she did wrong and never saw any of her targets but always shot very well with her private instructors.

34. On November 25, 2013, while Plaintiff's squad was exiting the auditorium after a presentation, Sgt. Torres informed the Squad as to what items they could wear to run such as hats, gloves and under armor. As Plaintiff approached Sgt. Torres, Sgt. Lubek whispered something into Sgt. Torres' ear. Sgt. Torres then said while looking lasciviously at Plaintiff, "And sports bras, don't forget your sports bras." Plaintiff felt uncomfortable that this comment was directed at her as she is buxom. Thereafter, all of the recruits said, "Holley you're the only one with a chest." Furthermore, during the beginning of the Academy, Officer Lisa Orlando went into the women's locker room and old the female recruits to wear sports bras because the "guys were noticing."

35. Plaintiff made comments to fellow recruits about being singled out for disparate treatment and threatened she would formally complain about the harassment she was being subjected to but was continually intimidated by her supervisors and threatened not to complain or expose their misconduct.

36. For example, Officer Joshua Maarleveld told Plaintiff to "stop feeling sorry for yourself" and that if she complained, she would "end up like Recruit Blackwell."[2] The PAPD instructors would say to Plaintiff, "Blackwell thought we were singling her out, you see where Recruit Blackwell is now. You can join Blackwell. Find her on Facebook and become her friend." Thus, Plaintiff was threatened to not report this

---

[2] Another female recruit, Recruit Blackwell, actually did resign because of the insidious and constant sexual harassment.

10

conduct or she would receive the same treatment as Recruit Blackwell and lose her position as a recruit which is what ultimately happened.

37. Additionally, multiple instructors, including Frederica Tokponwey, regularly commented that "snitches get stitches and end up in ditches." Plaintiff therefore feared retaliation if she formally complained and was directly threatened not to do so.

38. On December 2, 2013, Plaintiff was unexpectedly called into the office where Chief Michael Brown, Lt. John Adorno, Sgt. Torres and Sgt. Frank D'Alessandro advised Plaintiff that she should resign because she failed the firearms course. However, no target practice shooting results were ever shown her to prove she failed to qualify as required by policy. When Plaintiff refused to resign, she was informed by Chief Brown that Superintendent Fedorko would terminate her the following morning. The next day, Superintendent Fedorko was in the building, but Sgt. Torres was not present.

39. Plaintiff was never advised of a maximum number of attempts to qualify and was given varying answers by instructors when asked, including that she would be allowed up to six attempts to qualify. Indeed, pursuant Interim Order 6-09 contained within the Recruit Firearms Guide Book, officers returning after six and even nine firearm qualification failures are required to receive "an individual block of remedial instruction by range personnel." Additionally, pursuant to the Police Academy Recruit Guidebook 2013, If a recruit:

> [I]s unable to achieve an acceptable level of proficiency on a <u>performance test</u>, the Commanding Officer of the Police academy of his/her designee will:
>
> - Meet with the Recruit and inform the Recruit of the failure;

- Review the test results with the Recruit and identify the cause(s) for the failure;
- Recommend ways to correct the performance and schedule a re-test with at least one full day for further study permitted;
- Prepare a written report summarizing the meeting, including his/her signature, the date, time, and location. The Recruit must also sign this report. If a designee meets with a Recruit, all written records will be forwarded to the Commanding Officer of the Police Academy.

40. Yet, Plaintiff was never told why she purportedly failed and was never given her shooting results nor did she ever receive one-on-one instruction or a written report regarding her failure as required; she was instead told to resign or face termination.

41. Incredibly though, other recruits received one-on-one training and Officers Howard and McNair actually received gifts from recruits expressing gratitude for help at the range. Indeed, Recruit Orivelis Torres failed to qualify three or four times but received one-on-one instruction from Sgt. Howard.

42. On December 4, 2013, during roll call at the Academy, Sgt. Torres asked Plaintiff if she was still there in front of the entire platoon. Sgt. Torres asked the guide, "Is Holley still here?" and the Plaintiff responded, "Yes sir." When Plaintiff responded, Sgt. Torres replied, "Look at you, good job staying alive." Sgt. Torres did not normally perform roll call. After everyone was dismissed, Sgt. Torres instructed Plaintiff to stay. Sgt. Torres told Plaintiff to fall out of formation. Sgt. Torres then proceeded to tell Plaintiff that she reminded him of a commercial with a frog and a crane. Sgt. Torres asked Plaintiff if she ever saw a commercial with a frog and crane where the frog was being dragged away by the crane referring to her pending dismissal from the Academy. Plaintiff said she had not seen that commercial, and Sgt. Torres

asked Plaintiff if she had her phone so he could "Google" it. Plaintiff told Sgt. Torres

that she did not have her phone on her, and Sgt. Torres told her to look it up because

she reminded him of the frog and he "likes that shit."

43. Later that day, on December 4, 2013, Plaintiff was terminated. Sgt. Torres called

Plaintiff out of classroom instruction with her belongings to attend a supervisors

meeting. While waiting outside the Chief's Office, Plaintiff reached into her duffle

bag to grab a memo book. Sgt. Torres then put his hand on his gun and asked what

Plaintiff was reaching for, implying that she was reaching for a weapon.

44. Chief Brown then called Plaintiff into his office and told Plaintiff that her time at the

Academy was done. Plaintiff was never made privy to her personnel file or the

termination paperwork signed by Superintendent Fedorko. When Plaintiff requested a

copy of her file, Chief Brown informed Plaintiff that she would have to request it from

human resources. Plaintiff attempted to contact human resources, but Chief Brown

provided her with a faulty telephone number. To date, Plaintiff has never received her

personnel file from human resources or her termination paperwork filed by the PAPD.

Plaintiff also never received compensation for the vacation time and personal time she

accumulated while at the Academy.

45. Plaintiff repeatedly inquired as to whether she had the right to appeal her discharge but

no response has ever been provided to her despite provisions requiring a disciplinary

hearing before termination in the agreement as well as in the PAPD Police Patrol

Guide. Moreover, Plaintiff was never afforded a review by the Recruit Evaluation

Board as required under the Police Academy Recruit Guidebook 2013.

46. From the inception of her hiring and her training at the PAPD Academy, Plaintiff was unlawfully discriminated against because of her gender. Plaintiff was also sexually harassed by her instructors on a constant basis. Accordingly, on January 31, 2014, Plaintiff served the Port Authority and the PAPD with a Notice of Tort Claim alleging discrimination and retaliation.

## COUNT I
**(Due Process Violations, 42 U.S.C. §1983)**

47. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

48. Defendants intentionally and wrongfully denied Plaintiff her right to a proper meeting advising her of her failure to qualify with her weapon as required by the Police Academy Recruit Guidebook 2013. A proper meeting necessarily included a review of her shooting results, the opportunity to schedule a re-test with at least one day for further study, and a written report summarizing the meeting which Plaintiff was required to sign. Plaintiff was also denied an opportunity to return to the range on another day and re-qualify as required by Interim Order 6-09 contained within the Recruit Firearms Guide Book.

49. Moreover, Plaintiff was denied her right to appear before the Evaluation Board before being terminated from the Academy as required by the Police Academy Recruit Guidebook 2013. Finally, Plaintiff was denied her right to appeal her termination and receive a proper disciplinary hearing as required by the collectively negotiated labor agreement as well as in the PAPD Police Patrol Guide.

50. Defendants violated Plaintiff's rights guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiff was deprived of equal protection and her right to procedural and substantive due process rendering defendants liable to Plaintiff pursuant to 42 U.S.C. §1983.

51. Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983 because the individual Defendants acted under color of law and exhibited a reckless and callous indifference to Plaintiff's rights through their purposeful actions, willful misconduct and evil motive and are all upper-level management and agents of the Defendant PAPD and direct supervisors of Plaintiff. Moreover, the custom, policy and practice of the employer caused Plaintiff to be harmed.

52. As a result of Defendants' wrongful conduct, Plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied. Plaintiff has sustained injury to her reputation and to her employability. Plaintiff has also suffered emotional distress, pain, and suffering. Further, Plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, Plaintiff has been otherwise injured.

   **WHEREFORE**, Plaintiff, Amanda Holley, demands judgment against the defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees pursuant to 42 U.S.C. § 1988 and such other relief as this Court may award in the interests of justice.

## COUNT II
### (First Amendment Violations, 42 U.S.C. §1983)

53. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

54. Plaintiff made comments to fellow recruits that she was being singled out for disparate treatment and wanted to formally complain about the harassment to which she was being subjected. Upon information and belief, Plaintiff's supervisors learned of her comments and thereafter she was continually intimidated by her supervisors and threatened not to complain in violation of her right of free expression under the First Amendment

55. Defendants violated plaintiff's rights guaranteed by the First Amendment to the United States Constitution.

56. Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983 because the individual Defendants acted under color of law and exhibited a reckless and callous indifference to Plaintiff's rights through their purposeful actions, willful misconduct and evil motive and are all upper-level management and agents of the Defendant PAPD and direct supervisors of Plaintiff. Moreover, the custom, policy and practice of the employer caused Plaintiff to be harmed.

57. As a result of Defendants' wrongful conduct, Plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied. Plaintiff has sustained injury to her reputation and to her employability. Plaintiff has also suffered emotional distress, pain, and suffering.

16

Further, Plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, Plaintiff has been otherwise injured.

**WHEREFORE**, Plaintiff, Amanda Holley, demands judgment against the defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees pursuant to 42 U.S.C. § 1988 and such other relief as this Court may award in the interests of justice.

## COUNT III
### (Civil Conspiracy, 42 U.S.C. §1985, 1986)

58. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

59. The individual Defendants acted deliberately and with malicious sexual animus and exhibited a reckless and callous indifference to Plaintiff's civil rights to be free from discrimination through their purposeful actions, willful misconduct and evil motive and are all upper-level management and supervisor employees and/or agents of Defendant PAPD and/or direct supervisors of Plaintiff. Moreover, the custom, policy and practice of the employer caused Plaintiff to be harmed. As such, the Defendant employer is responsible for the conduct of its agents and employees.

60. Defendants conspired amongst themselves for the purpose of depriving Plaintiff of her right to equal protection  and to be free from discrimination as safeguarded under 42 U.S.C. §1985(1), (2), and (3) and conspired to commit acts violating 42 U.S.C. §1985(1), (2), and (3), had the power and opportunity to prevent or aid in the

prevention of the deprivation of those rights, and defendants purposefully neglected, failed or refused to prevent the success of such conspiracy rendering Defendants liable to Plaintiff pursuant to 42 U.S.C. §§1986.

61. Defendants exhibited a reckless and callous indifference to Plaintiff's rights through their purposeful actions, willful misconduct and evil motive and are all upper-level management and agents of the defendant employer and/or direct supervisors of the plaintiff. Moreover, the custom, policy and practice of the employer caused Plaintiff to be harmed.

62. As a result of Defendants' wrongful conduct, plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied. Plaintiff has sustained injury to her reputation and to her employability. Plaintiff has also suffered emotional distress, pain, and suffering. Further, plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, plaintiff has been otherwise injured.

WHEREFORE, Plaintiff, Amanda Holley, demands judgment against the defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees pursuant to 42 U.S.C. § 1988 and such other relief as this Court may award in the interests of justice.

## COUNT IV
### (Civil Conspiracy)

63. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

64. Defendants intentionally and wrongfully engaged in a civil conspiracy to deprive Plaintiff of her employment rights and civil rights, to harass Plaintiff, to subject her to a hostile work environment, and to prevent Plaintiff from the continued enjoyment of her position for improper reasons and motivations.

65. The Port Authority and the PAPD are liable for the acts of their employees pursuant to the doctrine of *Respondeat Superior*.

66. As a result of Defendants' wrongful conduct, plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied. Plaintiff has sustained injury to her reputation and to her employability. Plaintiff has also suffered emotional distress, pain, and suffering. Further, plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, plaintiff has been otherwise injured.

**WHEREFORE**, Plaintiff, Amanda Holley, demands judgment against the defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees and such other relief as this Court may award in the interests of justice.

## COUNT V
### (Wrongful Termination Against Public Policy)

67. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

68. The decision to terminate Plaintiff because of her gender and in furtherance of a campaign of sexual harassment and discrimination and to punish her for threatening to file complaints exposing the Defendants' willful misconduct was contrary to a clear mandate of public policy concerning the public health, safety and welfare of the public and the protection of the environment.

69. The Port Authority and the PAPD are responsible for the actions of its employees pursuant to the doctrine of *Respondeat Superior*.

70. As a result of Defendants' wrongful conduct, Plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied.   Plaintiff has sustained injury to her reputation and to her employability.   Plaintiff has also suffered emotional distress, pain, and suffering. Further, Plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, Plaintiff has been otherwise injured.

**WHEREFORE**, Plaintiff, Amanda Holley, demands judgment against the Defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees and such other relief as this Court may award in the interests of justice.

## COUNT VI
### (Intentional Infliction of Emotional Distress)

71. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

72. As set forth in preceding paragraphs, Plaintiff suffered ongoing sexual harassment and disparate treatment whereby she was continually subjected to demeaning, discriminatory, and distressing behavior by Defendants.  Furthermore, Plaintiff was continually threatened not to complain about the harassment and ultimately subjected to a wrongful termination.

73. Defendants intentionally imposed verbal, physical and mental abuse on Plaintiff, forced her to endure a hostile, abusive, and embarrassing work environment, and caused her to suffer severe mental and emotional distress.  As a direct, foreseeable, and proximate result of the outrageous actions of Defendants, Plaintiff has suffered and will continue to suffer damages including but not limited to severe emotional distress, humiliation, embarrassment and anxiety, manifesting itself in physical and psychological symptoms.

74. All of the Defendants did intentionally, maliciously, and/or in gross and wonton disregard of the safety and well-being of Plaintiff and caused Plaintiff to sustain severe emotional upset and injury.

75. The Port Authority and the PAPD are responsible for the actions of its employees pursuant to the doctrine of *Respondeat Superior*.

76. As a result of Defendants' wrongful conduct, Plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the

position denied.   Plaintiff has sustained injury to her reputation and to her employability.   Plaintiff has also suffered emotional distress, pain, and suffering. Further, Plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, Plaintiff has been otherwise injured.

WHEREFORE, Plaintiff, Amanda Holley, demands judgment against the Defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages, attorneys fees and such other relief as this Court may award in the interests of justice.

## COUNT VII
### (Assault & Battery)

77. Plaintiff repeats and realleges the allegations set forth in the above paragraphs as if set forth at length herein.

78. On October 4, 2013, during OC training, Plaintiff was singled out for unwarranted and excessive exposure to OC spray.   Plaintiff was sprayed by Sgt. Torres who is not certified as an OC instructor even though all the other recruits were only sprayed once and by one person.   As a result, Plaintiff experienced pain for six hours and could not open her eyes.

79. As such, Defendant Torres' act of excessively exposing Plaintiff to OC spray was deliberately intended to cause a harmful or offensive contact with Plaintiff and caused Plaintiff an imminent apprehension of such contact and additional harm.

80. Moreover, Defendant Torres engaged in offensive and non-consensual touching of Plaintiff and as such committed battery of her.   The unauthorized invasion of

22

Plaintiff's person, was intentional and offensive and caused her severe alarm, pain, and injury.

81. The actions and conduct of Defendant was egregious and malicious. The actions and conduct of the Defendant was done with willful and wanton disregard for the rights of Plaintiff.

82. As a result of Defendant's wrongful conduct, Plaintiff has been deprived of her employment rights and other rights, has lost wages, and other emoluments of the position denied.   Plaintiff has sustained injury to her reputation and to her employability.   Plaintiff has also suffered emotional distress, pain, and suffering. Further, Plaintiff has been compelled to retain an attorney to vindicate her rights. Additionally, Plaintiff has been otherwise injured.

   **WHEREFORE**, Plaintiff, Amanda Holley, demands judgment against the Defendants, jointly and severally, for money damages, pre and post judgment interest, attorneys' fees and costs of suit, for back pay and front pay, promotion, compensatory damages, punitive damages against all individual Defendants, attorneys fees and such other relief as this Court may award in the interests of justice.

## DESIGNATION OF TRIAL COUNSEL

**GINA MENDOLA LONGARZO** is designated as trial counsel.

## DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, **AMANDA HOLLEY**, demands a trial by jury.

LAW OFFICES OF GINA MENDOLA
LONGARZO, LLC

By:   /s/ Gina Mendola Lonagarzo
GINA MENDOLA LONGARZO, ESQ.
Attorney for Plaintiff
Dated:  December 3, 2014         AMANDA HOLLEY

## PROOF OF MAILING/CERTIFICATION

I hereby certify that an original and copy of the within  Complaint, Designation of Trial Counsel and Jury Demand was filed with the Clerk of United District Court, 50 Walnut Street, Newark, New Jersey.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

LAW OFFICES OF GINA MENDOLA
LONGARZO, LLC

By:   /s/ Gina Mendola Lonagarzo
GINA MENDOLA LONGARZO, ESQ.
Attorney for Plaintiff
Dated:  December 3, 2014         AMANDA HOLLEY

24